NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NEW JERSEY BUILDING LABORERS STATEWIDE BENEFIT FUNDS AND THE TRUSTEES THEREOF, | Civ. No. 20-5180 |
| Petitioners, | **OPINION** |
| v. |  |
| NOVA CRETE, INC., |  |
| Respondent. |  |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Petition and Motion to Confirm Arbitration Award filed by Petitioners New Jersey Building Laborers Statewide Benefit Funds and the Trustees Thereof (collectively, the "Funds") (ECF Nos. 1, 2), and the Cross-Motion to Dismiss the Petition filed by Respondent Nova Crete, Inc. ("Nova Crete") (ECF No. 8). The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Petition and Motion to Confirm Arbitration Award are denied, and the Cross-Motion to Dismiss the Petition is granted.

## BACKGROUND

**I.   Relevant Documents**

This case arises out of a dispute regarding a company's contribution obligations under a

1

collective bargaining agreement. Between 2005 and 2019, a union[1] and Nova Crete executed four one-page "Short-Form Agreements" (collectively, "SFAs"). (Parsons Cert. Ex. A, ECF No. 10-2 (compiling SFAs dated May 3, 2005; September 7, 2007; October 24, 2016; and May 8, 2019).) The SFAs incorporate the Building, Site and General Construction Collective Bargaining Agreement ("CBA") between the union and Nova Crete. (*Id.*)

The SFAs and CBA delegate disputes, including disputes regarding arbitrability and whether an agreement exists, to an arbitrator. The 2007 and 2019 SFAs state, "The permanent arbitrator appointed by the Trustees of the [F]unds shall decide all disputes arising under the Agreement including all matters of procedural and substantive arbitrability." (*Id.*) The CBA states, "The Arbitrator shall have the authority to decide all disputes arising under this Agreement including all matters of procedural and substantive arbitrability and whether an Agreement exists between the parties." (CBA Art. XXII, § 22.20(d), Parsons Cert. Ex. B.)

The agreements also specify Nova Crete's obligations. The CBA and a separate Trust Agreement require Nova Crete to pay contributions to the Funds for employees performing work under the CBA. (Arb. Award ¶ 4, Petition Ex. D, ECF No. 1 (citing CBA Arts. X, XIV); Trust Agreement Art. V, Parsons Cert. Ex. C.) The 2016 and 2019 SFAs provide, "This Short Form Agreement is not a one job agreement." (Parsons Cert. Ex. A.)

In accordance with the CBA, an independent auditor conducted an audit to determine

---

[1] The complete name of the union as set forth in the SFAs is the New Jersey Building Construction Laborers Local Unions and New Jersey Building Construction Laborers District Council affiliated with the Laborers' International Union of North America. (Parsons Cert. Ex. A.)

2

whether Nova Crete had paid its required contributions. (Arb. Award ¶ 5.)[2] The Funds concluded that Nova Crete violated the CBA by failing to pay over $700,000 in contributions between October 24, 2016 and September 30, 2018. (*Id.* ¶ 8.)

## II.     Initiation of Arbitration and Nova Crete's Fraud-in-the-Execution Claim

The Funds pursued collection of the contributions in arbitration. (*Id.* ¶ 12.) The initial hearing dates were scheduled in December 2019 and January 2020. (*Id.* ¶ 13.) At Nova Crete's request, the January 2020 hearing date was adjourned to February 25, 2020, and then to March 11, 2020. (*Id.* ¶¶ 14–17.) On March 10, 2020, Nova Crete's counsel notified the Funds that Nova Crete would not be participating in the arbitration. (*Id.* ¶ 18.) Nova Crete's counsel explained that the CBA was "null and void because [Nova Crete] was fraudulently induced to execute the . . . agreement." (*Id.*)[3]

According to Nova Crete, a union representative demanded that Nova Crete commit to using union workers on all of its projects. (Resp.'s Br. at 4, ECF No. 8-3 (citing Cardoso Cert. ¶ 3, ECF No. 8-4).) When Nova Crete's president indicated that he would only agree to utilize union workers on a single project, the union representative allegedly affirmed that any agreement between the union and Nova Crete would be a single-job agreement. (*Id.* at 5 (citing Cardoso Cert. ¶¶ 5–6).)

When signing the SFAs, the union apparently never presented Nova Crete with the incorporated CBA. (*See id.* (citing Cardoso Cert. ¶ 8).) Moreover, in response to direct

---

[2] The 2019 CBA and Trust Agreement authorize the Funds to review any documentation necessary to determine whether Nova Crete has satisfied its contribution obligations. (*See* CBA Art. XVI, § 16.50(c); Trust Agreements Art. V, § 5.)
[3] Nova Crete "reserve[d] all its legal rights to challenge any issued award in any subsequent filed enforcement action." (Arb. Award ¶ 18.)

questioning from Nova Crete, the union representative purportedly confirmed that the parties' agreement applied only to Nova Crete's current, ongoing project. (*Id.* at 5–6 (citing Cardoso Cert. ¶ 9).) Nova Crete alleges that the Funds "never sought reimbursement for payments for any other projects except the single project being worked on at the time it executed the agreement." (*Id.* at 6 (citing Cardoso Cert. ¶ 10).) Consequently, Nova Crete understood its agreement with the union to cover only the single project that the union representative confirmed it would. (*Id.* (citing Cardoso Cert. ¶ 8).)

### III. Arbitration Award

Arbitration proceeded with the Funds' counsel only on March 11, 2011. (Arb. Award ¶ 19.) Arbitrator J.J. Pierson, Esq. (the "Arbitrator") concluded that Nova Crete's conduct confirmed its intent to comply with the CBA. (*Id.* ¶ 22.)[4] The Arbitrator reasoned that "the dates of the [SFAs] . . . coincide with the effective dates of the full Laborers Agreement." (*Id.*) Moreover, the Arbitrator noted, Nova Crete hired union members through the Funds' hiring hall procedures, paid wages to union workers performing covered work, and remitted contributions to the Funds. (*Id.*) The Arbitrator further explained that the SFAs were explicitly not "one job agreement[s]," oral agreements could not alter Nova Crete's contribution obligations, and the SFAs were valid and enforceable. (*See id.* ¶¶ 22–24.) The Arbitrator directed Nova Crete to pay a total amount of $1,300,112.57 to the Funds, including a principal amount of $749,840.13, $229,052.88 in interest, $149,968.03 in liquidated damages, $168,751.53 in attorneys' fees, and the Arbitrator's fee of $2,500.00. (*Id.* ¶ 25.)

---

[4] The Arbitration Award has two paragraphs numbered paragraph 22. This citation refers to the first paragraph 22.

**IV.     Post-Arbitration Motions**

On April 28, 2020, the Funds filed a Petition and Motion to Confirm Arbitration Award in this Court. (ECF Nos. 1, 2.) On June 22, 2020, Nova Crete filed a Cross-Motion to Dismiss. (ECF No. 8.) The Funds filed an Opposition (ECF No. 10), and Nova Crete filed a Reply (ECF No. 11). The Funds' Petition and Motion to Confirm Arbitration Award and Nova Crete's Cross-Motion to Dismiss are presently before the Court.

## LEGAL STANDARD

Within one year after the entry of an arbitration award, "any party to the arbitration may apply to [a district court located in the district where the award was made] for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. An arbitration award is subject to vacatur on four exclusive grounds: (1) "where the award was procured by corruption, fraud, or undue means"; (2) "where there was evident partiality or corruption in the arbitrators"; (3) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 583 (2008) (concluding that § 10 lists the exclusive grounds for vacatur).

"There is a strong presumption under the [Federal Arbitration Act ("FAA")] in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d

237, 241 (3d Cir. 2005).[5] Courts will vacate an award only under the "exceedingly narrow circumstances" listed in 9 U.S.C. § 10(a). *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013). The moving party "bears the burden of proving that the arbitration award at issue should be vacated." *Jersey Shore Univ. Med. Ctr. v. Local 5058, Health Prof'ls & Allied Emps.*, 2017 WL 1025180, at *3 (D.N.J. Mar. 16, 2017) (citation omitted).

## DISCUSSION

### I. Three-Month Limitation Period

The Funds argue that Nova Crete did not timely serve its Cross-Motion to Dismiss. (*See* Opp'n at 9–11, ECF No. 10.) The FAA requires that "[n]otice of a motion to vacate, modify, or correct an award . . . be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. This three-month limitation also applies to "defenses which could have been raised in motions to vacate." *Serv. Emps. Int'l Union, Local No. 36 v. Office Ctr. Servs., Inc.*, 670 F.2d 404, 409 (3d Cir. 1982). Rule 6 of the Federal Rules of Civil Procedure governs the calculation of the three-month deadline. Rule 6 provides,

> When the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Fed. R. Civ. P. 6(a)(1).

---

[5] The Court proceeds under the premise that the parties' agreement is governed by the FAA. "Although the FAA applies to commercial arbitration agreements by its own terms, it is well-accepted that labor arbitration disputes arising under federal law should be resolved in accordance with the FAA, even though labor arbitration agreements may not be technically governed by the statute." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 2020 WL 5509703, at *5 n.6 (3d Cir. Sept. 14, 2020) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298–99, 298 n.6 (2010)) (applying the FAA under similar factual circumstances).

6

The Arbitration Award was issued on March 14, 2020. (Arb. Award at 27.)[6] The Funds argue that the Arbitration Award was delivered on March 23, 2020. (Opp'n at 10.) Nova Crete argues that the Arbitration Award was delivered on March 24, 2020. (Reply at 5, ECF No. 11.) Even if the Arbitration Award were delivered on March 23, the three-month deadline would have expired on June 23, 2020. *See Stevens v. Jiffy Lube Int'l, Inc.*, 911 F.3d 1249, 1252 (9th Cir. 2018) (applying Rule 6's three-step framework). Nova Crete filed its Cross-Motion to Dismiss, which seeks to vacate the Arbitration Award (Resp.'s Br. at 12), on June 22, 2020. (ECF No. 8.) Therefore, Nova Crete timely submitted and served its defense to confirmation of the Arbitration Award.

## II.  Vacatur

Nova Crete does not explicitly specify which subsection of 9 U.S.C. § 10(a) authorizes the Court to vacate the Arbitration Award. Nova Crete argues that the CBA is unenforceable because the Funds engaged in fraud in the execution. (*See* Resp.'s Br. at 8–12.) Because the first three grounds for vacatur are not relevant to this matter, the Court will analyze Nova Crete's arguments under § 10(a)(4), which permits vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." § 10(a)(4).

An arbitrator exceeds her powers if she determines an issue that was for a court to decide. *See, e.g.*, *Unity Constr. Servs., Inc. v. N.J. Bldg. Laborers' Local Unions and Dist. Councils*, 2011 WL 6177316, at *3–4 (D.N.J. Dec. 12, 2011) (denying a motion to confirm an arbitration award under § 10(a)(4) because whether a company's chief financial officer had authority to bind

---

[6] The page number to which the Court refers is the CM/ECF page number.

the petitioner was a threshold issue for a court); *Composition Roofers Local 4 Pension Fund v. Best Roofing of N.J., Inc.*, 2009 WL 5033945, at *1–3 (D.N.J. Dec. 14, 2009) (denying a motion to confirm an arbitration award under § 10(a)(4) because whether the respondent was a signatory to the arbitration agreement was a threshold issue for a court). The principal question for the Court, then, is whether the merits of Nova Crete's fraud-in-the-execution claim, raised by Nova Crete before arbitration and considered by the Arbitrator, (*see* Arb. Award ¶¶ 22–23), was for the Arbitrator or a court to decide.

      A.    *Enforceability of Arbitration Clauses Generally*

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Agreements to arbitrate are valid under 9 U.S.C. § 2 "save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at 70. In the present case, the SFAs and CBA state that an arbitrator will decide questions of arbitrability, disputes between the parties, and whether an agreement exists. (Parsons Cert. Ex. A; CBA Art. XXII, § 22.20(d).) To determine whether the Arbitrator properly decided whether an agreement exists between the parties in the first instance, the Court looks to the "severability doctrine" and its exceptions.

      B.    *Severability Doctrine*

Where an agreement contains an arbitration clause, the "severability doctrine" provides a framework for allocation of authority between arbitrators and courts. Under the severability doctrine, "an arbitration clause is 'severable' and independently enforceable from the rest of the contract in which it is contained." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 2020 WL 5509703, at *6 (3d Cir. Sept. 14, 2020) (quoting *Sandvik AB v. Advent Int'l*

8

*Corp.*, 220 F.3d 99, 105 (3d Cir. 2000)).

Whether a court or arbitrator must hear a parties' challenge to an arbitration agreement generally depends on the type of challenge brought. "Challenges to the validity of arbitration agreements [under 9 U.S.C. § 2] can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "One type challenges specifically the validity of the agreement to arbitrate." *Id.* "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* A party cannot avoid arbitration simply by making the second type of challenge. *MZM Constr.*, 2020 WL 5509703, at *6; *see also, e.g.*, *N.J. Statewide Laborers Benefit Funds v. Am. Coring & Supply*, 341 F. App'x 816, 821 (3d Cir. 2009). For a court to hear challenges to an arbitration agreement, "the party opposing arbitration must challenge 'the arbitration clause itself.'" *MZM Constr.*, 2020 WL 5509703, at *6 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967)). For example, a claim of fraud in the inducement of an *entire contract* containing an arbitration clause—that is, the "container contract"—is to be decided by an arbitrator, whereas a claim of fraud in the inducement of an *arbitration clause itself* is to be decided by a court. *See Prima Paint*, 388 U.S. at 403–04.

    C.    *Courts Decide Questions Regarding Formation of Container Contracts*

This severability framework does not apply, however, "where the dispute at issue concerns contract *formation*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (emphasis added). In such instances, the dispute is "generally for courts to decide." *Id.* (citing *Buckeye*, 546 U.S. at 444 n.1); *see also MZM Constr.*, 2020 WL 5509703, at *6 (concluding that courts must "decide questions about the formation or existence of an arbitration

9

agreement, namely the element of mutual assent"); *Unity Constr.*, 2011 WL 6177316, at *3–4 (applying this rule to deny a motion to confirm arbitration award); *Best Roofing of N.J.*, 2009 WL 5033945, at *1–3 (same); *Rent-A-Center*, 561 U.S. at 70 n.2 (implying that this rule applies in proceedings on motions to confirm arbitration awards); *CD & L Realty LLC v. Owens Ill., Inc.*, 535 F. App'x 201, 204 (3d Cir. 2013) (same). This is so "[f]or good reason: [l]ack of assent to the container contract necessarily implicates the status of the arbitration agreement, when the container contract and the arbitration provision depend on the same act for their legal effect." *MZM Constr.*, 2020 WL 5509703, at *9 (citing *Sandvik*, 220 F.3d at 109, 111); *see also China Minmetals Materials Import & Export Co. v. Chi Mei Corp.*, 334 F.3d 274, 288 (3d Cir. 2003) ("[A] contract cannot give an arbitral body any power . . . if the parties never entered into [the contract].").

  The Third Circuit has concluded that, under this contract-formation rule, a court, not an arbitrator, must decide whether mental incapacity prevented formation or existence of a container contract, *see SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 274 (3d Cir. 2013) (implying that diminished capacity to consent would have constituted a challenge to the agreement's formation), and a court, not an arbitrator, must decide whether a signor lacked authority to bind an alleged principal to a container contract, *Sandvik*, 220 F.3d at 107.

  Even where an arbitration agreement delegates to an arbitrator the authority to decide whether an agreement exists, a court must decide questions regarding the formation and existence of the contract containing the arbitration agreement. *See MZM Constr.*, 2020 WL 5509703, at *9–11. In *MZM Construction*, an employer and a union signed a short-form agreement that incorporated the terms of collective bargaining agreements. *Id.* at *1. Under one collective bargaining agreement, the employer was required to make contributions to funds. *Id.*

10

The collective bargaining agreement also included an arbitration clause delegating to an arbitrator the authority to decide whether an agreement exists. *Id.* at *2. The funds conducted an audit and determined that the employer owed over $200,000 in contributions. *Id.*

The employer's president in *MZM Construction* maintained that she did not intend to sign a collective bargaining agreement requiring the employer to hire union workers and pay fringe benefits on *all* of its projects in the state. *Id.* According to the president, a union representative confirmed that the short-form agreement was for a single project. *Id.* The employer argued in district court that fraud in the execution voided the short-form agreement and the collective bargaining agreements. *Id.* The funds requested that the court refer the employer's fraud-in-the-execution claim and the collection dispute to the arbitrator. *Id.* at *3.

The Third Circuit held that, "unless the parties clearly and unmistakably agreed to arbitrate questions of contract formation *in a contract whose formation is not in issue*, those gateway questions are for the courts to decide." *Id.* at *11 (emphasis added). Applying this rule, the Third Circuit concluded that the formation of the contract, and thereby the formation of the delegation provision, was in issue because the employer had stated a claim of fraud in the execution. *Id.* at *14. The union representative, the court reasoned, misrepresented that the employer's president was signing an agreement for a single project, and the parties never discussed arbitration. *See id.* at *13. Accordingly, the district court, not the arbitrator, had the power to decide whether the alleged fraud in the execution vitiated the formation of the container contract. *See id.* at *14. This Court must now answer a similar question: whether Nova Crete's fraud-in-the-execution claim placed the formation or existence of the parties' arbitration agreement "in issue."

11

D.     *Fraud in the Execution*

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312–13 (N.J. 2014)).

"Fraud in the execution (or fraud in the factum) occurs when a party is compelled to sign the instrument 'by reason of a misrepresentation intended to deceive [her] as to its purport or content[.]'" *MZM Constr.*, 2020 WL 5509703, at *12 (quoting *Peter W. Kero, Inc. v. Terminal Constr. Corp.*, 78 A.2d 814, 817–18 (N.J. 1951)). "Fraud in the execution may also be present 'when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms' by reason of 'excusable ignorance.'" *Id.* (quoting *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 490, 491 (3d Cir. 1994)). Excusable ignorance "typically involves some sort of misconduct or imposition that cuts off the signer's opportunity to read, such as 'significant time pressure' and reliance on an erroneous 'assurance' that the parties' oral understanding had been or would be accurately memorialized in an instrument." *Id.* (quoting *Connors*, 30 F.3d at 488, 492–93).

The union representative's alleged erroneous confirmation that the SFAs or CBA reflected the parties' oral understanding forms the basis of a fraud-in-the-execution claim. When Nova Crete signed each SFA, it purportedly believed that the CBA applied only to its current, ongoing project. (Resp.'s Br. at 5.) Nova Crete apparently confirmed this understanding with the

12

union when presented with the SFAs. (*Id.* at 5–6, 10 (citing Cardoso Cert. ¶ 9).) Nova Crete also allegedly advised the union that it could not maintain profitability if it agreed to utilize union laborers on all of its projects. (*Id.* at 10 (citing Cardoso Cert. ¶ 5).) These allegations place the formation or existence of the SFAs and CBA in issue. Accordingly, whether fraud in the execution vitiated the formation of the parties' agreement was for a court to decide.

The 2016 and 2019 SFAs' declaration that the SFA "is not a one job agreement" does not alter this conclusion. (Parsons Cert. Ex. A.) "[A] signer's negligence in failing to read the instrument or 'in trusting a representation'" does not negate fraud in the execution. *See MZM Constr.*, 2020 WL 5509703, at *12 (quoting *Kero*, 78 A.2d at 818).

The Funds contend that Nova Crete's argument amounts to a claim of "fraud in the inducement," as opposed to fraud in the execution. (*See* Opp'n at 17.) According to the Funds, this difference matters because fraud in the inducement renders an agreement "voidable," whereas fraud in the execution renders an agreement "void." (*See id.*)[7] "Fraud in the inducement occurs when someone signs the document they intended to sign, but their assent was induced by a material misrepresentation about facts external to that document." *MZM Constr.*, 2020 WL 5509703, at *13 (citing *Sandvik*, 220 F.3d at 109; 37 Am. Jur. 2d Fraud and Deceit § 2 (2020)).[8] In *MZM Construction*, the Third Circuit rejected a similar characterization. *Id.* at *14 (concluding that the employer's claim was best characterized as fraud in the execution because

---

[7] Although the Third Circuit in *SBRMCOA* questioned the significance of this distinction after *Buckeye*, *see* 707 F.3d at 715, the *MZM Construction* court appeared to acknowledge the distinction's import, *see* 2020 WL 5509703, at *14.

[8] The Third Circuit provided an illustrative example of this distinction: "if a party misrepresents that the price of cheese will increase to induce someone into signing a contract to buy milk in bulk, that is fraud in the inducement. But if a party assures its counterparty that it is signing a contract for cheese when it is in fact a contract for milk, that is fraud in the execution." *MZM Constr.*, 2020 WL 5509703, at *14 (citing *Connors*, 30 F.3d at 490).

the employer's president did not intend to assent to a statewide collective bargaining agreement with an arbitration provision, and the union representative erroneously confirmed the president's understanding of the document). For the same reasons provided by the Third Circuit, this Court disagrees with the Funds' fraud-in-the-inducement characterization. Because Nova Crete's allegations of fraud in the execution place the formation or existence of the contract in issue, the question of whether the parties reached an agreement is for a court to decide. By deciding that issue, the Arbitrator exceeded his authority under 9 U.S.C. § 10(a)(4). Accordingly, the Court vacates the Arbitration Award.

## CONCLUSION

For the foregoing reasons, the Funds' Petition and Motion to Confirm Arbitration Award (ECF Nos. 1, 2) are denied, Nova Crete's Cross-Motion to Dismiss the Petition (ECF No. 8) is granted, and the Arbitration Award is vacated. An appropriate Order will follow.

Date: <u>October 15, 2020</u>     */s/ Anne E. Thompson*
                                  ANNE E. THOMPSON, U.S.D.J.